## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## AUGUSTA DIVISION

EUGENE GRIGGS,

     Plaintiff,

v.

BELINDA DAVIS, Regional Director, Georgia Department of Corrections, in her official capacity,

STAN SHEPARD, Assistant Regional Director, Georgia Department of Corrections, in his official capacity,

SCOTT WILKES, Warden, Augusta State Medical Prison, in his official capacity,

VERNEAL EVANS, Former Correctional Officer, Augusta State Medical Prison, in his individual capacity,

     Defendants.

CIVIL ACTION

NO. 1:17-CV-_____

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff Eugene Griggs respectfully files this complaint seeking damages, declaratory relief, and injunctive relief.  In support thereof, Mr. Griggs states as follows:

1

# INTRODUCTION

1.      This is an action to enforce a disabled prisoner's Eighth Amendment right to freedom from cruel and unusual punishment.

2.      Plaintiff Eugene Griggs is a 48-year-old prisoner diagnosed with Guillain-Barre syndrome and chronic inflammatory demyelinating polyneuropathy. Because of these nerve disorders, Mr. Griggs suffers from weakness and diminished sensation in his legs and arms.  He has difficulty walking and relies on a wheelchair to move long distances.  Mr. Griggs has also been diagnosed with schizophrenia, for which he is under a forced-medication regimen that places him in frequent contact with correctional officers.

3.      The Georgia Department of Corrections houses Mr. Griggs at Augusta State Medical Prison due to his special medical needs.

4.      In July 2015, Mr. Griggs was standing in a line waiting to speak to his mental health counselor.  He posed no threat to anyone.  Without justification, Defendant Verneal Evans, a unit manager, grabbed Mr. Griggs by the neck and slammed him to the ground.  Defendant Evans had no arguable need to use force against Mr. Griggs, an obviously frail and disabled man.

5.      Mr. Griggs is one of many prisoners at Augusta State Medical Prison who have been subjected to excessive force by correctional officers.  These prisoners are often disabled and physically vulnerable.

6.     Mr. Griggs expects to show that Defendants Belinda Davis, Stan Shepard, and Scott Wilkes are aware of a routine practice among Augusta State Medical Prison correctional officers of using excessive force against prisoners, but have failed to take reasonable steps to protect prisoners and hold officers accountable.

7.     Mr. Griggs faces an ongoing risk that he will be unlawfully assaulted again by Augusta State Medical Prison correctional officers, but he lacks a meaningful procedure by which to seek protection from those officers.  When prisoners file grievances reporting excessive force incidents, the grievances are referred to an Internal Investigation Unit that almost always summarily rejects the reports without investigation.  In those extraordinary cases where individual officers are reprimanded for using excessive force, Defendants penalize only those officers directly responsible.  Defendants consistently fail to address the underlying lack of supervision, training, and accountability that allow unlawful violence against prisoners to flourish at Augusta State Medical Prison.

8.     Mr. Griggs seeks damages for violations of his Eighth Amendment rights, and injunctive relief to prevent further violations of his rights by Defendants and similarly situated correctional officers.

**JURISDICTION AND VENUE**

9.     This action is brought pursuant to 42 U.S.C. § 1983, and this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

10.     Venue is proper in this district and division because the acts and omissions at issue occurred in Richmond County, Georgia.

**PARTIES**

**A.     Plaintiff**

11.      Plaintiff Eugene Griggs is a prisoner serving a 30-year sentence at Augusta State Medical Prison in Grovetown, Georgia.

**B.     Defendants**

12.     Defendant Belinda Davis is a Georgia resident sued in her official capacity as regional director for the North Region of the Georgia Department of Corrections.  As regional director, Defendant Davis has supervisory and management authority over Augusta State Medical Prison.  Defendant Davis has served as regional director since 2014 or 2015.  At all times relevant to this complaint, Defendant Davis was acting under color of state law.

13.     Defendant Stan Shepard is a Georgia resident sued in his official capacity as assistant regional director for the North Region of the Georgia Department of Corrections.  As assistant regional director, Defendant Shepard has supervisory and management authority over Augusta State Medical Prison.

Defendant Shepard has served as assistant regional director since July 2016. Between 2013 and July 2016, Defendant Shepard served as warden of Augusta State Medical Prison.  At all times relevant to this complaint, Defendant Shepard was acting under color of state law.

14.     Defendant Scott Wilkes is a Georgia resident sued in his official capacity as warden of Augusta State Medical Prison.  As warden, Defendant Wilkes has supervisory and management authority over the prison's correctional staff.  Defendant Wilkes assumed his role as warden in July 2016.  He previously worked at Augusta State Medical Prison in other capacities, including mental health counselor from 2000 to 2004, mental health behavior specialist from 2004 to 2008, and deputy warden of care and treatment from 2008 to 2012.  From 2012 until he became warden of Augusta State Medical Prison, Defendant Wilkes was the superintendent of Augusta Transitional Center, a work-release center for which Augusta State Medical Prison is a host facility.  At all times relevant to this complaint, Defendant Wilkes was acting under color of state law.

15.     Defendant Verneal Evans is a Georgia resident sued in his individual capacity for actions taken when he served as a correctional officer and unit manager at Augusta State Medical Prison.  At all times relevant to this complaint, Defendant Evans was acting under color of law.

## STATEMENT OF FACTS

**A.    Eugene Griggs Is a Disabled Prisoner Housed at Augusta State Medical Prison Due to His Specialized Medical Needs.**

16.    Eugene Griggs is a 48-year-old, wheelchair-dependent man serving a 30-year sentence at Augusta State Medical Prison, in Grovetown, Georgia.

17.    Augusta State Medical Prison houses approximately 1,200 prisoners. Some prisoners are brought to Augusta State Medical Prison from other Georgia prisons for short-term, specialized medical services.  Other prisoners are, like Mr. Griggs, assigned to the prison permanently to manage medical or mental health problems requiring ongoing treatment.  Approximately one-third of the prisoners are classified as "mental health," meaning that they are receiving treatment for mental illness.

18.    Mr. Griggs is held at Augusta State Medical Prison because he has been diagnosed with Guillain-Barre syndrome, chronic inflammatory demyelinating polyneuropathy, and schizophrenia.

19.    Guillain-Barre syndrome occurs when a person's autoimmune system attacks the sheath of protective myelin around the body's nerve fibers.  It causes symptoms including weakness, sensory loss, diminished reflexes, and paralysis.

20.    In 1995, Mr. Griggs was diagnosed with Guillain-Barre syndrome brought on by an autoimmune reaction to a flu shot.  He was hospitalized for several weeks at St. Francis Hospital in Columbus, Georgia.  Afterward, he was

moved to Augusta State Medical Prison for extended treatment and rehabilitation. At the height of his illness, Mr. Griggs was paralyzed from the neck down and could not speak.  After the paralysis subsided, Mr. Griggs underwent extensive physical therapy to learn to speak and walk again.

21.    Though Mr. Griggs recovered some use of his limbs, the myelin coating around his nerve fibers had been damaged.  Mr. Griggs continues to suffer from chronic inflammatory demyelinating polyneuropathy, a rare condition that results in loss of reflexes, progressively increasing weakness in the arms and legs, and other problems.  As a result, Mr. Griggs cannot walk long distances unassisted. He has depended on a wheelchair for the past 20 years.

22.    Mr. Griggs is also diagnosed with schizophrenia, a mental disorder that impacts his ability to understand the world and make decisions.

23.    Mr. Griggs wants medical care but prefers not to take antipsychotic medications.  Use of those medications interferes with his thinking and violates the religious teachings of Mr. Griggs's Muslim faith.

24.    Prison officials may order Mr. Griggs to be medicated by force. When Mr. Griggs refuses to submit to injections, a team of correctional officers physically subdues Mr. Griggs while the medications are administered.

25.    Due partly to Mr. Griggs's weakness and partly to correctional officers' techniques, the process of administering medication by force presents a risk of serious injury to Mr. Griggs.

26.    During a forced-medication procedure in May 2003,[1] Mr. Griggs was removed from his wheelchair by correctional officers, placed on the floor of his cell, and physically subdued while a nurse injected him with antipsychotic medications.  During this process, correctional officers fractured Mr. Griggs's left femur.  Mr. Griggs waited for over three hours in excruciating pain before an ambulance transported him to a hospital.

27.    Surgery was required to repair Mr. Griggs's femur.  A metal rod running the full length of his thigh was drilled through the shaft of the bone.  The rod was secured with interlocking screws in Mr. Griggs's knee.  The rod and screws remain in Mr. Griggs's leg.

28.    Mr. Griggs continues to suffer pain and difficulty bearing weight in his left leg due to the residual effects of the femur fracture.  Mr. Griggs also suffers from anxiety in his interactions with correctional officers because he fears that officers will again injure him.  Mr. Griggs reasonably believes that excessive force

---

[1] The femur fracture described in this paragraph occurred while Mr. Griggs was housed at a different Georgia prison, and is described here to illustrate Mr. Griggs's susceptibility to serious injury and his well-founded fear that he will again be seriously injured by correctional officers if excessive force is used against him.  Mr. Griggs does not seek relief for the 2003 incident, and does not contend that Defendants are liable for the incident.

incidents that might injure a healthy person only slightly could cause serious injury or death to Mr. Griggs because of his compromised medical condition.

29.     Mr. Griggs is currently under an order to be involuntarily medicated by injection every other week.  When injections are administered, correctional officers are stationed nearby to forcefully subdue Mr. Griggs in the event that he resists the injections.

**B.     Mr. Griggs Was Assaulted Without Justification by Defendant Verneal Evans.**

30.     Mr. Griggs has been housed at Augusta State Medical Prison continuously for approximately five years.  Over the past 20 years, Mr. Griggs has rotated several times between Augusta State Medical Prison and other Georgia prisons.

31.     In 2014, a psychiatrist at Augusta State Medical Prison granted Mr. Griggs's request to discontinue his antipsychotic medications.  Though Mr. Griggs continued to consume what he believed was a normal diet after he discontinued the medications, his weight dropped significantly.

32.     By July 2015, Mr. Griggs, who is around six feet tall, weighed around 120 pounds.  He appeared obviously frail to anyone who saw him.  Due to his nerve conditions, he moved slowly, had difficulty coordinating his movements, and depended on a wheelchair much of the time.

33.    On July 27, 2015, Mr. Griggs left his dormitory to visit his mental health counselor and discuss difficulties he was having following the death of a family member.  Because the counselor's office was a short distance—around 50 feet—from the dormitory entrance, Mr. Griggs left his wheelchair in the dormitory and walked to the counselor's office.  The office was located in a short hallway.

34.    Defendant Verneal Evans, the unit manager for Mr. Griggs's housing unit, ordinarily required prisoners to line up in the hallway, beside the counselor's office, while they were waiting to see the counselor.  When Mr. Griggs entered the hallway to wait for the counselor, however, Defendant Evans became angry and yelled at the prisoners to clear the hallway.  Defendant Evans ordered the prisoners to wait outside a door at the end of the hallway, not in the hallway itself.

35.    Mr. Griggs complied with Defendant Evans's instruction.  He walked to the end of the hallway.  Defendant Evans followed behind Mr. Griggs, yelling at Mr. Griggs and other prisoners as they went.

36.    When Mr. Griggs reached the end of the hallway, he passed through a door and turned around to wait for the counselor.  As Mr. Griggs was exiting the hallway, Defendant Evans stopped short of the doorway and turned to yell at a prisoner to Evans's right.  While still looking at the other prisoner and continuing to yell, Defendant Evans stepped through the door and came into contact with Mr.

Griggs, who was, as Defendant Evans had instructed, standing at the door waiting to see the mental health counselor.

37.    Angered that Mr. Griggs was inadvertently standing in his way, and knowing that Mr. Griggs was wheelchair dependent and physically weak, Defendant Evans grabbed Mr. Griggs by the throat, pushed Mr. Griggs into a wall, and slammed Mr. Griggs to the floor with force sufficient to cause Mr. Griggs's head to bounce off of the ground.

38.    Mr. Griggs was not a threat to Defendant Evans, did not appear to be a threat, and did nothing to justify Defendant Evans in using force.  To the extent that Defendant Evans had any basis for placing his hands on Mr. Griggs, the force he used was grossly excessive and lacked any arguable relationship to a legitimate penological goal.  Defendant Evans's sole purpose was to cause Mr. Griggs pain.

39.    As a result of Defendant Evans's actions, Mr. Griggs suffered bruising and pain in his shoulder blades, soreness in his neck, and pain in his head.  The pain, soreness, and bruising lasted for several days.

40.    Another prisoner intervened and helped Mr. Griggs to his feet.  The prisoner led Mr. Griggs to the dormitory.

41.    Around five minutes later, two officers arrived and ordered Mr. Griggs out of the dormitory.  The officers handcuffed Mr. Griggs and brought him to the prison's medical unit in his wheelchair.

42.    Mr. Griggs was examined by a physician assistant in the medical unit. Mr. Griggs complained that he was "hurting all over," but the physician assistant said that he saw no injuries.  Mr. Griggs was taken to a segregation cell and held in isolation for several days before returning to his dormitory.

### C.    Defendant Evans's Assault on Mr. Griggs Reflects a Widespread and Ongoing Practice of Using Excessive Force Against Prisoners.

43.    Defendant Evans's unlawful assault on Mr. Griggs reflects a longstanding pattern and practice.  For many years, correctional officers at Augusta State Medical Prison have routinely used force against prisoners solely to cause pain and not to maintain or restore order.  The practice is so widespread that any prison administrator affiliated with this facility would be aware of it.

44.    Mr. Griggs expects to show that many prisoners have complained of being assaulted when they posed no arguable threat to correctional officers.  For example, numerous prisoners have complained of being assaulted by correctional officers while they are handcuffed behind the back and being compliant.

45.    Though surveillance cameras installed throughout the prison capture footage of certain areas, many areas of the prison, such as the elevators, have no camera coverage.  Correctional officers frequently take prisoners to those areas to assault them.

46.    Mr. Griggs expects to show that many prisoners who are unlawfully assaulted by correctional officers at Augusta State Medical Prison are, like Mr.

Griggs, physically disabled, mentally ill, or both.  Using unnecessary force against

people with these vulnerabilities offends settled norms of human decency.

47.    Mr. Griggs expects to show that Defendants Davis, Shepard, and

Wilkes know that prisoners at Augusta State Medical Prison are frequently

assaulted by officers without justification.  Defendants are aware of these incidents

through prisoners' grievances, incident reports, and informal reports by

correctional officers, prisoners, and prisoners' family members.

> **D.    Defendants Belinda Davis, Stan Shepard, and Scott Wilkes Have
> Failed to Respond Reasonably to the Substantial Risk That
> Officers Will Use Excessive Force.**

48.    Defendants Davis, Shepard, and Wilkes have failed to take reasonable

steps to prevent correctional officers from unlawfully assaulting prisoners.

49.    Mr. Griggs expects to show that Defendants are aware of and

routinely ignore credible evidence of excessive force.  Defendants' ordinary

response to such reports is to forward them to the Georgia Department of

Corrections Internal Investigation Unit for review, a process that usually results in

a conclusion that the prisoner's report was unsubstantiated.

50.    Mr. Griggs expects to show that the Internal Investigation Unit almost

always finds prisoners' reports of excessive force unsubstantiated.  The reports of

excessive force are summarily rejected without investigation in all but a handful of

cases.  Out of 1,986 use-of-force incidents referred to the Internal Investigation

Unit for review in 2016 and 2017, all but 9 were denied without investigation.

51.    Mr. Griggs expects to show that Defendants only discipline

correctional officers in rare cases where the Internal Investigation Unit finds an

excessive force report substantiated, which occurs only where the evidence of

excessive force is so strong that ignoring it would subject Defendants to criminal

liability or loss of employment.  Defendants knowingly disregard the welfare and

safety of prisoners, taking action only when failing to do so would jeopardize

Defendants' own interests.

52.    Mr. Griggs expects to show that Defendants' response to substantiated

reports of excessive force is to discipline or terminate only those correctional

officers who directly injured a prisoner.  Correctional officers who stand by while

prisoners are unlawfully assaulted are not reprimanded, nor are supervisors

reprimanded when their subordinates use excessive force.

53.    To take an example of Defendants' typical approach to credible

reports of excessive force, a prisoner was unlawfully assaulted inside of an elevator

by several officers in October 2013.  The prisoner sustained a perforated eardrum

that could not have occurred absent someone striking him in the head.  The

prisoner filed a grievance complaining of the incident, and, in November 2013,

numerous officers involved wrote statements denying that they used force against

the prisoner. The matter was referred to the Internal Investigation Unit and closed as unsubstantiated. No action was taken against the officers involved.[2]

54.    In December 2013, barely one month after giving statements denying their involvement in the October 2013 assault, and presumably knowing that they were potentially under investigation, three of the same officers were involved in beating another prisoner on an elevator. That prisoner filed a grievance two days later. Mr. Griggs expects to show that the grievance was referred to the Internal Investigation Unit and later closed as unsubstantiated. Mr. Griggs further expects to show that no action was taken against the officers involved.[3]

55.    In February 2014, a group of officers involved in either or both of the October 2013 and December 2013 assaults again assaulted a prisoner inside of an elevator, despite presumably knowing that they were all potentially under investigation for similar assaults in the same elevator. Mr. Griggs expects to show that only three officers were disciplined for their unlawful use of force despite multiple officers being involved.[4] Mr. Griggs further expects to show that several of the officers involved in this incident, and in the October 2013 and December

---

[2] The prisoner filed a lawsuit against the correctional officers involved. The case was settled before trial.

[3] The prisoner filed a lawsuit against the correctional officers involved. The case was settled before trial.

[4] Three of the correctional officers involved were prosecuted by the United States for violating a prisoner's rights. They eventually pleaded guilty. Mr. Griggs expects to show that other officers who participated in the assault have not been prosecuted or reprimanded.

2013 incidents, continue to work at Augusta State Medical Prison or elsewhere in the corrections field.

56.    Mr. Griggs expects to show that the correctional officers involved in the October 2013, December 2013, and February 2014 assaults had many other accusations of excessive force made against them.  The correctional officers felt free to continue assaulting prisoners, even while under investigation, because it is common knowledge among officers at this facility that prisoners' reports of excessive force are ignored unless backed by overwhelming evidence.  Because it is rare for such evidence to exist, correctional officers know that they can assault prisoners with impunity because Defendants will almost always accept the officers' accounts of excessive force incidents, no matter how implausible those accounts or how many times the officers in question have been accused of using excessive force in the past.

57.    Mr. Griggs expects to show that many correctional officers at Augusta State Medical Prison have engaged in similar patterns of misconduct that Defendants have willfully ignored and thus allowed to continue.

58.    Correctional officers at Augusta State Medical Prison are protected by an agreement with the State of Georgia, under which the State funds their legal defense and satisfies judgments or settlements when the officers are sued by prisoners for using excessive force.  As a result, the Georgia Department of

Corrections and its individual correctional officers lack any economic incentive to respect the rights of prisoners.  When they are sued by prisoners, correctional officers pay no monetary penalty and suffer little inconvenience, as their defense is orchestrated by the Georgia Attorney General or his designee, and the State of Georgia covers any adverse judgments against the correctional officers.

**E.    Mr. Griggs Faces a Substantial Risk of Being Unlawfully Assaulted in the Near Future.**

59.    Mr. Griggs faces a substantial likelihood that he will be unlawfully assaulted again by correctional officers.

60.    Mr. Griggs has been the victim of further excessive force incidents following the incident involving Defendant Evans.  For example, in June 2016, Mr. Griggs was stunned in the back with a taser, while his hands were behind his back and he posed no threat, after he asked to use the bathroom.[5]

61.    In September 2016, Mr. Griggs was pushed to the floor and stunned in the back with a taser after correctional officers accosted him over a supposed "homemade weapon."  The "weapon" turned out to be two ink pens that he was holding.

---

[5] Mr. Griggs did not file a grievance about this incident because he has difficulty writing, and because he knew from past experience that grievances about excessive force are ignored.  He instead told a correctional officer that he knew where illicit drugs could be found, believing that prison staff would notify the Federal Bureau of Investigation, and that FBI investigators would come to interview him thinking he would lead them to contraband.  Mr. Griggs had hoped to inform FBI agents about the violations of his rights.  As it turned out, no one from the FBI or any other agency interviewed Mr. Griggs about the purported contraband.

62.    Since 2016, Mr. Griggs has been under an order to undergo forced administration of antipsychotic medication.  At least once every other week, correctional officers accompany Mr. Griggs while the medication is injected by a nurse.

63.    The forced-medication regimen places Mr. Griggs in an antagonistic relationship with correctional officers.  Though Mr. Griggs wants to follow prison rules, his schizophrenia affects how he perceives and reacts to events.  In addition, he sincerely believes that administration of antipsychotic drugs violates important religious principles and negatively impacts his ability to think.  These circumstances sometimes lead him to resist the forced injections.  For example, on November 18, 2016, Mr. Griggs declined to submit to an injection, and several correctional officers held him down while a nurse injected him with antipsychotic medication.  This is the kind of situation that led to Mr. Griggs's femur being fractured in 2003.

64.    Given Mr. Griggs's past experiences with excessive force, his diminished health, his ongoing forced-medication regimen, and the deeply entrenched practice among Augusta State Medical Prison correctional officers of using unnecessary force against prisoners, Mr. Griggs is reasonably likely to be subjected to excessive force in the near future.

F.     **The Georgia Department of Corrections Lacks a Meaningful Process for Investigating and Preventing Excessive Force Incidents.**

65.     Flaws in Georgia Department of Corrections procedures for investigating excessive-force incidents prevent the Department's grievance procedure from operating as a meaningful administrative remedy. *See Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016) ("[A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates.").

66.     The Georgia Department of Corrections automatically closes any grievance alleging excessive force by a correctional officer and refers the grievance for a confidential investigation.  The official policy governing grievances provides, "If an offender files a grievance involving sexual assault or physical force involving non-compliance with Department policies; such actions *automatically end* the grievance process.  These grievances are automatically forwarded through the Scribe application to Internal Investigation Unit and/or the PREA Coordinator for review and whatever action is deemed appropriate."  Ga. Dep't of Corr. Policy No. 227.02 at 11-12 (July 20, 2015) (emphasis added).

67.     The Internal Investigation Unit does not provide any form of relief to prisoners, or even inform prisoners of the outcome of their grievances.  Mr. Griggs

expects to show that the usual practice of the Internal Investigation Unit is to deem any report of excessive force unsubstantiated.

68.    On August 2, 2015, Mr. Griggs filed a grievance concerning the use of force by Defendant Evans.  The following month, Mr. Griggs received a memorandum stating that his grievance had been closed on September 2, 2015, because the grievance had been "forwarded to the Georgia Department of Corrections Internal Investigations Unit."

69.    The Georgia Department of Corrections has provided Mr. Griggs no reports on the status or outcome of the investigation.  Mr. Griggs expects to show that the investigation was closed and that Defendant Evans was not reprimanded, counseled, or otherwise disciplined for his excessive force against Mr. Griggs. Defendant Evans voluntarily retired in late 2016.

70.    Mr. Griggs expects to show that the practice of the Internal Investigation Unit is to find that allegations of excessive force are unfounded or unsubstantiated unless there is overwhelming evidence to the contrary, such as admissions by correctional officers that excessive force was used against a prisoner.  The kind of evidence necessary to sustain a prisoner's complaint is available only in extraordinary cases.  As a result, numerous correctional officers who have used excessive force against other prisoners continue to serve in positions that allow them an opportunity to use excessive force against Mr. Griggs.

## CLAIMS FOR RELIEF

### COUNT I:

### VIOLATION OF EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
### (Against Defendant Evans)

71.     Plaintiff re-alleges, as if fully set forth herein, the allegations in paragraphs 1 to 47.

72.     In slamming Eugene Griggs against a wall and throwing him to the floor for no legitimate reason, Defendant Verneal Evans used force sadistically and for the sole purpose of causing pain or injury to Mr. Griggs, not to maintain or restore order, in violation of Mr. Griggs's right to freedom from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution.

73.     Defendant Verneal Evans's actions caused Eugene Griggs to suffer physical injuries including bruising and pain on his back and shoulders, soreness in his neck, and pain in his head.

74.     Defendant Verneal Evans's actions caused Eugene Griggs to suffer emotional distress.

75.     Defendant Verneal Evans acted with evil motive or intent, and with reckless indifference to Eugene Griggs's federally protected rights, such that punitive damages are warranted.

## COUNT II:

### VIOLATION OF EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
### (Against Defendants Davis, Shepard, and Wilkes)

76.     Plaintiff re-alleges, as if fully set forth herein, the allegations in paragraphs 1 to 70.

77.     Defendants Belinda Davis, Stan Shepard, and Scott Wilkes have supervisory authority over all correctional officers and staff assigned to Augusta State Medical Prison.

78.     Defendants Belinda Davis, Stan Shepard, and Scott Wilkes are aware of a substantial risk that Eugene Griggs and other prisoners at Augusta State Medical Prison will be subjected to excessive force by correctional officers in violation of their right to freedom from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution.  Defendants Davis, Shepard, and Wilkes have failed to take reasonable steps to reduce the risk that Mr. Griggs and other prisoners will be subjected to excessive force by correctional officers.

79.     Absent injunctive relief, Eugene Griggs will suffer irreparable harm and further violations of his rights under the Eighth and Fourteenth Amendments. The balance of hardships favors granting injunctive relief, and an injunction will advance the public interest by preventing further violations of Mr. Griggs's rights.

**PRAYER FOR RELIEF**

Plaintiff Eugene Griggs respectfully requests that this Court:

(a)    Assume jurisdiction over this action;

(b)    Grant Plaintiff a trial by jury;

(c)    Declare that the acts and omissions described herein violated Plaintiff's rights under the Constitution and laws of the United States;

(d)    Enter judgment in favor of Plaintiff and against Defendant Verneal Evans for all damages allowed by law, including, but not limited to:

      (i)    Compensatory damages for the full value of Plaintiff's Eighth Amendment right to freedom from cruel and unusual punishment, physical injuries, pain and suffering, and emotional distress;

      (ii)    Nominal damages;

      (iii)    Punitive damages; and

      (iv)    Reasonable attorney's fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and as otherwise allowed by law;

(e)    Enter injunctive relief against Defendants Belinda Davis, Stan Shepard, and Scott Wilkes to prevent further violations of Plaintiff's Eighth Amendment rights, with particular injunctive provisions to be determined following discovery and in light of the requirements of 18 U.S.C. § 3626(a);

(f)    Order such additional relief as this Court may deem just and proper.

Respectfully submitted,

/s/ Sarah Geraghty
Sarah Geraghty
Georgia Bar No. 291393
Ryan Primerano*
Georgia Bar No. 404962
SOUTHERN CENTER
FOR HUMAN RIGHTS
83 Poplar Street, N.W.
Atlanta, Georgia 30303
(404) 688-1202
(404) 688-9440 (facsimile)
sgeraghty@schr.org

*Counsel for Plaintiff*

*Admission pro hac vice to be requested

July 27, 2017