IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

EUGENE GRIGGS, CHRISTOPHER          *
VARNER, and CAMERON MADDOX,         *
                                    *
        Plaintiffs,                 *
                                    *
        v.                          *          CV 117-089
                                    *
AHMED HOLT, in his official         *
capacity as Assistant Regional      *
Director, Georgia Department        *
of Corrections; EDWARD PHILBIN,     *
in his official capacity as         *
Warden, Augusta State Medical       *
Prison;[1] STAN SHEPARD, in his     *
individual capacity; VERNEAL        *
EVANS, ANTONIO BINNS,               *
JUSTIN WASHINGTON, LENON            *
BUTLER, RODGERICK NABORS,           *
JULIAN GREENAWAY, and JERRY         *
BEARD, Former Correctional          *
Officers, Augusta State Medical     *
Prison, in their individual         *
capacities; TREI BLUITT, JANSON     *
CREAGOR, and JOHN DOE,              *
Correctional Officers, Augusta      *
State Medical Prison, in their      *
individual capacities,              *
                                    *
        Defendants.                 *

                            ───────────

                        O R D E R

                            ───────────


        Before the Court are two motions to dismiss and a motion to

sever.  The first motion to dismiss is filed by Defendants Jerry

Beard, Lenon Butler, Julian Greenaway, Rodgerick Nabors, Stan

Shepard, and Scott Wilkes.  (Doc. 29.)  The other is filed by

---

[1] The Clerk is **DIRECTED** to add Defendants Holt and Philbin as parties to the
case as discussed, _infra_, at 9-10.

Justin Washington, who is proceeding pro se. (Docs. 38, 58.) Washington's motion and brief are identical to his fellow Defendants' filings, and, therefore, the Court will address them together. Plaintiffs filed a response in opposition to the motions to dismiss and Defendants submitted a reply brief in support. (Docs. 68, 77.) For the reasons stated below, Defendants' motion to dismiss (doc. 29) is **GRANTED IN PART AND DENIED IN PART** and Defendant Washington's motions to dismiss (docs. 38, 58) are **GRANTED**.

The motion to sever is filed by Defendants Jerry Beard, Trei Bluitt, Lenon Butler, Janson Creagor, Verneal Evans, Julian Greenaway, Rodgerick Nabors, Stan Shepard, and Scott Wilkes. Plaintiffs filed a response in opposition to the motion, and Defendants submitted a reply brief in support. (Docs. 69, 76.) For the reasons given below, Defendants' motion to sever (doc. 33) is **DENIED**.

## I. BACKGROUND

This case began with a complaint filed by Christopher Varner, Eugene Griggs, and Cameron Maddox, all inmates or former inmates at the Augusta State Medical Prison ("ASMP"); each man alleges he was the subject of an excessive force assault by correctional officers at ASMP in violation of the Eighth and Fourteenth Amendments.

## A. Christopher Varner's Excessive Force Allegations

On February 13, 2014, Varner was standing in the medication line at ASMP with other inmates. (Am. Compl., Doc. 7, ¶ 58.) Defendants Antonio Binns, Justin Washington, Lenon Butler, Rodgerick Nabors, and Julian Greenaway, all correctional officers, entered the hallway and began shouting epithets at the inmates. (Id. ¶ 59.) Varner verbally responded to the officers leading Sergeant John Williams to grab Varner and attempt to handcuff him. (Id. ¶ 60.) In response, Varner turned and struck Sgt. Williams in the head. (Id.) This prompted the officers to attack Varner by placing him in a chokehold until he lost consciousness. (Id. ¶ 61.) When Varner regained awareness, he was handcuffed and bleeding in a small vestibule off the hallway while the officers stood around him. (Id. ¶ 62.) The officers continued to punch, kick, and stomp Varner while he was handcuffed on the floor. (Id.)

Next, the officers escorted Varner to an elevator, and, upon entering it, they resumed assaulting Varner despite the fact that he was handcuffed and otherwise compliant. (Id. ¶¶ 64, 66.) The officers continued to use force against Varner while riding up and down the elevator four times. (Id. ¶ 67.) One officer used pepper spray on Varner's face, and Defendant Butler employed a metal baton to beat Varner. (Id. ¶ 68.) Upon exiting the elevator, the officers took Varner to ASMP's medical unit where the attacks continued. (Id.) A nurse in the medical unit pleaded with the

officers to stop, but they persisted in attacking Varner with kicks to the face, pepper spray, and a metal baton. (Id. ¶¶ 68-69.)

After the assault ended, Varner needed to be transferred to a civilian hospital for treatment of a broken eye socket, jaw, nose, and extensive bruising on his face and torso. (Id. ¶ 71.) Varner alleges that he continues to suffer pain in his jaw and feet; frequent headaches; and an exacerbation of his pre-existing mental illnesses, schizophrenia and bipolar disorder. (Id. ¶¶ 34, 71.) In April 2017, Defendants Binns and Washington as well as Sgt. Williams were convicted and sentenced in this Court for their role in assaulting Varner. (Id. ¶ 72.)

## B. Investigations Regarding the Assault on Varner

On the same day that Varner was assaulted, an inmate called Varner's father, Thomas Starkey, to inform him about Varner's medical condition. (Decl. of Thomas Starkey, Doc. 68-12, ¶ 8.)[2] Starkey and Varner's mother telephoned the Warden's office to express concerns over the incident. (Id. ¶ 9; Decl. of Tracie Davis, Doc. 68-13, ¶¶ 7-9.) An incident report was generated in which the Warden recommended turning the investigation over to an internal affairs unit. (Incident Report No. 142128, Doc. 68-8, at 1.) An investigation was then conducted by the Georgia Department of Correction's ("GDC") Internal Investigations Unit ("IIU"). The

---

[2] Although evidence contained outside the pleadings is generally not considered in a motion to dismiss, outside evidence not bearing on the merits of the case may be considered by the Court when analyzing whether a prisoner exhausted his administrative remedies, as required by the Prison Litigation Reform Act. Bryant v. Rich, 530 F.3d 1368, 1374-75 (11th Cir. 2008).

investigator interviewed Defendants Binns and Washington as well as Sgt. Williams. (Doc. 77-3, at 2-3.) The investigation report noted that after the February 13th incident, each man resigned in lieu of termination. (Id. at 3-4.)

On July 24, 2015, seventeen months after the assault, Varner filed a grievance about the incident alleging Washington, Greenaway, Butler, and Sgt. Williams broke his jaw, nose, and eye socket. (Grievance No. 201318, Doc. 68-11, at 3.) The ASMP Grievance Coordinator and Warden both rejected the grievance as untimely. (Id.)

Nearly a year later, on June 24, 2016, Varner filed a second grievance regarding the February 13th incident. (Grievance No. 222227, Doc. 68-11, at 4.) In that submission, Varner requested leave to file out of time because he is "mental health with brain damage" and stated, "I had no clue to grieve for [sic] I can sue in the name of the law." (Id.) This grievance was also rejected by the Grievance Coordinator and Warden for being untimely; both also noted that the staff members named by Varner were no longer employed at ASMP. (Id.) After rejection of the grievance, Varner filed a Central Office Appeal. (Decl. of Shareka Browman, Doc. 77-1, ¶ 15.) On appeal, the decision to reject the grievance as untimely was upheld. (Id.)

Finally, on June 21, 2017, Varner filed a third grievance about the incident and again requested leave to file out of time. (Grievance No. 247024, Doc. 68-11, at 6.) Varner cited his

inability to comprehend civil law and the limiting effect of his injuries following the assault as justification for the late filing. (Id.) The grievance was again rejected as untimely by administrators without comment on whether Varner had shown good cause for his untimeliness. (Id.)

## C. Cameron Maddox's Excessive Force Allegations

Plaintiff Cameron Maddox also alleges he was assaulted with excessive force by correctional officers at ASMP. On September 27, 2016, Maddox was handcuffed and removed from his cell because an officer suspected Maddox of fighting with his cellmate. (Am. Compl., ¶ 90.) Maddox was examined at the medical unit for signs of any injuries sustained during the suspected fight; none were found. (Id. ¶ 92.) Defendants Janson Creagor and Trei Bluitt, both correctional officers, then escorted the handcuffed Maddox to an administrative segregation cell. (Id. ¶ 96.) While riding in the elevator, Bluitt began punching Maddox in the thigh while Creagor kneed Maddox in the torso. (Id. ¶ 95.) Next, Bluitt used a baton to strike him while both officers criticized Maddox for attacking his cellmate. (Id.) Throughout this attack, Maddox maintains he was handcuffed and compliant. (Id. ¶ 93.)

Once inside the segregation cell the officers continued their assault of Maddox. (Id. ¶¶ 96-97.) At one point, Creagor pushed Maddox's head into the cell wall causing a laceration on his forehead. (Id. ¶ 97.) Before leaving the cell, the officers instructed Maddox to clean up the blood from his head. (Id. ¶¶

6

98–99.) The next day, before Maddox was allowed to meet with his visiting mother, he was taken to the medical unit to receive treatment for the cut on his head and change into a uniform without blood stains. (Id. ¶¶ 100-01.) In addition to the head laceration, Maddox sustained bruises on his leg. (Id. ¶ 102.)

## D. Eugene Griggs's Excessive Force Allegations

On July 27, 2015, Plaintiff Eugene Griggs attempted to visit his mental health counselor. (Am. Compl., ¶ 79.) While Griggs was waiting in line, Defendant Verneal Evans ordered Griggs and other prisoners to clear the hallway where they were lined up and to wait outside a door at the end of the hallway. (Id. ¶ 80.) Griggs complied with the instruction and began walking to the doorway. (Id. ¶ 81.) Following after Griggs, Evans began to walk through the doorway, but he was distracted by giving orders to other inmates. (Id. ¶ 82.) This distraction caused Griggs and Evans to inadvertently bump into one another. (Id.) In response, Evans grabbed Griggs by the throat and pushed him against the wall before slamming Griggs to the ground. (Id. ¶ 83.)

As a result of the incident, Griggs suffered bruising on his shoulder blades and experienced pain in his head, neck, and shoulders. (Id. ¶ 85.) Upon examination in the medical unit, a physician's assistant determined that Griggs suffered no visible injuries. (Id. ¶ 88.) Griggs further alleges he has been stunned with a taser on two separate occasions after the July 27th

incident, both times without sufficient provocation. (Id. ¶¶ 127-28.)

**E. Allegations of ASMP's Ongoing Practice of Using Excessive Force**

Plaintiffs allege the above described assaults and multiple others mentioned in the Amended Complaint[3] represent ASMP's "longstanding pattern and practice" of correctional officers using excessive force on prisoners solely to inflict pain on inmates, many of whom suffer from debilitative physical and mental illnesses. (Id. ¶¶ 104, 107.) Correctional officers use secluded areas, such as elevators, to conduct these attacks because those areas are not under video surveillance. (Id. ¶ 106.) Plaintiffs allege prison administrators, namely Defendants Stan Shepard and Scott Wilkes, have failed to correct these practices and routinely downplay or ignore credible complaints of excessive force by inmates. (Id. ¶¶ 117-21.) Finally, because Maddox and Griggs are still housed at ASMP, they face an ongoing risk of being harmed by correctional officers using excessive force. (Id. ¶¶ 126, 132.)

Based on the foregoing facts, each Plaintiff brings a claim for damages against their attackers. In Count I, Varner alleges Defendants Washington, Binns, Butler, Nabors, and Greenaway violated his Eighth and Fourteenth Amendment rights during the February 13th incident. (Id. ¶¶ 143-46.) Griggs alleges Defendant Evans violated his Eighth and Fourteenth Amendment rights during

---

[3] (See Am. Compl., ¶¶ 109-14.)

the July 27th incident. (Id. ¶¶ 139-42.) Lastly, Maddox alleges Defendant Bluitt and Creagor violated his Eighth and Fourteenth Amendment rights during the September 27th incident. (Id. ¶¶ 147-50.)

In Count II, Varner brings a claim for damages against Defendants Stan Shepard and Jerry Beard, in their individual capacities, under a theory of supervisor liability for their failure to take reasonable steps to prevent the February 13th assault. (Id. ¶¶ 151-59.) Varner specifically alleges Beard "had personally ordered, authorized, or condoned the use of excessive force against prisoners" at ASMP. (Id. ¶ 155.)

Finally, in Count III, Maddox and Griggs bring a claim for declaratory and injunctive relief against Defendant Stan Shepard, Assistant Regional Director for the North Region of the GDC, and Defendant Scott Wilkes, Warden of ASMP. (Id. ¶¶ 160-63.) This claim is brought against Wilkes and Shepard, in their official capacities, to prevent further violations of Griggs and Maddox's rights under the Eighth and Fourteenth Amendments.

Since filing the Amended Complaint, both Shepard and Wilkes have been replaced in their respective positions. (Docs. 62, 65.) Under Federal Rule of Civil Procedure 25(d), when a party sued in his official capacity resigns his position, the party's successor is automatically substituted into the case. **IT IS THEREFORE ORDERED** that ASMP's new Warden Edward Philbin is substituted for Defendant Scott Wilkes and GDC's new Assistant Regional Director

Ahmed Holt is substituted for Stan Shepard.[4] Both Holt and Philbin are Defendants only in their official capacities.

## II. DISCUSSION

Defendants' motion to dismiss raises two issues. First, Defendants that are the subject of Varner's claims argue that Varner failed to exhaust his administrative remedies through the GDC grievance procedure, as required by the Prison Litigation Reform Act, and therefore Varner is barred from bringing this action. Second, Defendants Shepard and Wilkes, now Holt and Philbin, contend Plaintiffs' claims for declaratory and injunctive relief should be dismissed for failure to state a claim. The Court will first address Defendants' position that Varner failed to exhaust his administrative remedies.

### A. Varner's Exhaustion of Administrative Remedies

#### 1. Georgia Department of Correction's Grievance Procedure

To start, it is important to outline the GDC grievance procedure that applied to Varner. The process commences with an inmate filing a grievance, which must be submitted within ten calendar days from the "date the offender knew, or should have known, of the facts giving rise to the grievance." (GDC's Standard Operating Procedure ("SOP") IIB05-0001, Doc. 29-2, Attach. A, at 7.) The prison's Grievance Coordinator screens the complaint to

---

[4] The Clerk is **DIRECTED** to terminate Defendants Wilkes and Shepard as parties.

recommend whether the Warden should accept or reject the grievance. (Id.) The SOP gives four situations in which the Warden should reject a grievance. (Id. at 7-8.) Relevant here is rejection for the grievance not being filed within the ten-day deadline. (Id. at 7.) However, the Grievance Coordinator may waive the time limit for "good cause." (Id.) The SOP defines good cause as "a legitimate reason involving unusual circumstances that prevented the offender from timely filing a grievance or an appeal. Examples include: serious illness [or] being housed away from a facility covered by this procedure." (Id. at 2.) An inmate can file an appeal with the Central Office where the Grievance Coordinator rejects the grievance, once the Warden responds to the grievance, or after the forty-day period allowed for the Warden's response expires without a decision. (Id. at 8-11.)

Special rules apply to grievances that allege the use of physical force involving non-compliance with GDC policies. Such grievances are "automatically forwarded through the Scribe application to [the] Internal Investigation Unit' and/or the PREA Coordinator for review and whatever action is deemed appropriate." (Id. at 10) (emphasis omitted). "Once a grievance is referred to [the] Internal Investigation Unit and/or the PREA Coordinator, then this is the final action that will be taken on the Grievance and terminates the grievance procedure." (Id.) (emphasis omitted).

11

## 2. PLRA Administrative Exhaustion Standard

The Prison Litigation Reform Act ("PLRA") provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in a jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purpose of the exhaustion requirement is, among other things, to allow an institution the time and opportunity to internally address complaints, to build an administrative record that clarifies the controversy, and to filter out frivolous claims. Porter v. Nussle, 534 U.S. 516, 525 (2002).

Because exhaustion of administrative remedies is a matter of abatement and not an adjudication on the merits, issues of exhaustion under the PLRA are to be decided on a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374-75 (11th Cir. 2008). Although analyzed as a motion to dismiss, "it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits." Id. at 1376.

The Eleventh Circuit uses a two-step process for analyzing exhaustion. First, the court compares the factual allegations in the defendant's motion to dismiss with those in the plaintiff's response, and, where a conflict exists, the court takes the plaintiff's version of the facts as true. Turner v. Burnside, 541

F.3d 1077, 1082 (11th Cir. 2008). If, under that light, the defendant is entitled to dismissal for the plaintiff's failure to exhaust administrative remedies, the complaint should be dismissed. Id.

Where dismissal is inappropriate at the first step, the court must make specific factual findings to resolve disputed issues related to exhaustion. Id. At this stage, because exhaustion is an affirmative defense and not a pleading requirement, the defendant has the burden of proving the plaintiff failed to exhaust his available administrative remedies. Id. (citing Jones v. Bock, 549 U.S. 199, 216 (2007)).

In this case, the parties make diverging allegations over whether an administrative remedy was available to Varner and whether the grievances Varner did file about the February 13th incident properly exhausted his remedies under the PLRA. As such, the Court must take Varner's version of the facts as true and finds Defendants are not entitled to dismissal because Varner alleges the GDC grievance procedure did not provide an available remedy to him.

Accordingly, the Court must move to the second Turner step and make specific findings to resolve the parties' factual disputes regarding exhaustion. Broadly speaking, the parties dispute three issues: (1) whether an administrative remedy was available to Varner, (2) whether the IIU's internal investigation satisfies Varner's exhaustion requirement, and (3) whether the three

13

grievances Varner submitted regarding the February 13th incident properly exhausted his administrative remedies. The Court will address each issue in turn.

### 3. Availability of Administrative Remedies

Varner's principal argument is that GDC's grievance procedure does not provide him a remedy. In Ross v. Blake, 578 U.S. ---, 136 S. Ct. 1850 (2016), the United States Supreme Court announced three situations where an administrative remedy is unavailable to a prisoner. Id. at 1859-60. First, an administrative procedure is unavailable when prison officials refuse to follow established grievance policy or are "consistently unwilling" to provide relief to inmates. Id. at 1859. Second, the administrative process might be so confusing or vague that it is "essentially unknowable." Id. Importantly, the Supreme Court imposes an objective standard, requiring the rules to be so confusing that "no *ordinary* prisoner can discern or navigate it . . . no *reasonable* prisoner can use them." Id. (emphasis added). Finally, a remedy may be unavailable where prison administrators prevent inmates from filing grievances through "machination, misrepresentation, or intimidation." Id. at 1860. Varner makes no allegations or arguments under the third situation, but does address the other two.

To the extent Varner argues that his mental condition prevented him from understanding the grievance process and the need to complain about the February 13th incident, that argument must fail. In Ross, the Supreme Court rejected the Fourth

14

Circuit's "special circumstances" test and held the PLRA does not permit any discretionary "judge-made exceptions" to the exhaustion requirement. 136 S. Ct. at 1856. As noted above, the second availability exception requires the court to apply an objective standard, not a subjective standard that considers an inmate's special circumstances. Here, the evidence shows that each inmate is given an oral explanation of the grievance procedure upon entering the custody of the GDC and a copy of the Orientation Handbook for Offenders. (Decl. of Shareka Browman, ¶ 4.) Further, inmates can access a copy of the grievance procedure at the facility or law library. (Id.)

To hold, as Varner would have the Court do, that his inability to know that he needed to file a grievance about the incident makes a remedy unavailable to him would carve out a special circumstance for a particular plaintiff, a practice the Supreme Court unequivocally rejected in Ross. Indeed, "in construing the PLRA's exhaustion provision [the Supreme Court] reject[ed] every attempt to deviate . . . from its textual mandate." Id. at 1857. Although the application of the objective standard mandated by Ross unavoidably leads to the harsh result that an administrative remedy was available to Varner despite his mental illnesses, the Court is bound to follow Supreme Court precedent.

Moreover, an exception for Varner would be especially hard to justify considering he filed two unrelated grievances about his health care on March 12, 2014. (Doc. 29-2, Attachs. C, D.)

15

Although these grievances were filed just beyond the ten-day window for filing a complaint about the February 13th incident, they are close enough in proximity to show Varner understood how to utilize the grievance procedure. As such, the Court finds that ASMP's grievance procedure provided an available remedy to Varner for the February 13th incident.

Next, Varner contends that the GDC grievance procedure for excessive force complaints operates as a dead end that cannot provide relief because such grievances are automatically forwarded to the IIU, which terminates the grievance procedure. The filing of an excessive force grievance is not a dead end, rather it is the one action that would satisfy Varner's duty to exhaust his administrative remedies. In White v. Staten, 672 F. App'x 919 (11th Cir. 2016) (per curiam), the court interpreted the same grievance procedure that is at issue in this case. Id. at 921-22. The court found that timely filing an excessive force grievance was all a prisoner needed to do to exhaust his administrative remedies because such grievances are automatically forwarded to the IIU, at which point the grievance process terminates. Id. at 923.

Further, filing an excessive force grievance that is automatically forwarded to the IIU does provide some prospect of relief to prisoners, contrary to Varner's position. Here, the IIU investigation initiated by ASMP's Warden led to Sgt. Williams and Defendants Washington and Binns resigning from ASMP in lieu of

16

termination. (Report of Investigation, Doc. 77-3, at 3-4.) In addition, the investigation was responsible for the three officers being prosecuted under 18 U.S.C. § 242 for deprivation of rights under color of state law. See United States of America v. Williams, et al., 1:16-CR-024 (S.D. Ga. April 7, 2016). These facts show that an IIU investigation, whether requested on the Warden's own initiative or by an inmate grievance, can provide relief to a prisoner.[5] The question then becomes whether an IIU investigation that is commenced without a prisoner filing a grievance can satisfy the PLRA's exhaustion requirement.

### 4. The IIU's Investigation

Varner contends that the IIU investigation initiated by ASMP's Warden satisfied his duty to exhaust administrative remedies. This argument confuses the role of the IIU with Varner's independent duty to exhaust administrative remedies available to him.

It appears that the Eleventh Circuit has not directly addressed whether an internal investigation satisfies a prisoner's exhaustion requirement. Every other Circuit to consider the issue, however, has decided it does not. The Sixth, Seventh, and Ninth Circuits have all concluded that a related internal investigation does not, by itself, satisfy the PLRA's exhaustion requirement.

---

[5] The Court emphasizes these facts are used for the sole purpose of resolving whether an IIU investigation can provide relief to an aggrieved prisoner and should not be construed as deciding the merits of Varner's claims. See Bryant, 530 F.3d at 1374-75.

<u>Pavey v. Cooley</u>, 663 F.3d 899, 905 (7th Cir. 2011); <u>Panero v. City of North Las Vegas</u>, 432 F.3d 949, 953 (9th Cir. 2005); <u>Thomas v. Woolum</u>, 337 F.3d 720, 734 (6th Cir. 2003), *abrogated on other grounds by* <u>Woodford v. Ngo</u>, 541 U.S. 81, 87 (2006). Even the prisoner's direct involvement and cooperation with an internal investigation will not satisfy the exhaustion requirement. <u>Id.</u>

To determine whether a prisoner exhausted his administrative remedies, the court must "look to the inmate's grievance, not to other information compiled in other investigations." <u>Panero</u>, 432 F.3d at 953. After all, § 1997e(a) is directed at the *prisoner's* administrative remedies, not other related investigations. <u>Id.</u> (citing <u>Thomas</u>, 337 F.3d at 734).

Varner correctly emphasizes that the GDC grievance procedure requires an inmate's excessive force grievance to be automatically forwarded to the IIU for investigation, thereby ending the grievance process. However, Varner's contention that the commencement of an IIU investigation by a prison official serves the same purpose as an inmate's grievance being automatically forwarded to the IIU goes too far. As shown above, the PLRA exhaustion requirement requires the prisoner to exhaust the remedies that are available *to him*, not separate and independent administrative processes.

Thus, Varner was required to use the GDC grievance procedure to exhaust his administrative remedies. Under that procedure, Varner needed to timely file a grievance about the February 13th

18

incident within ten days to satisfy the exhaustion requirement. See White, 672 F. App'x at 923 (finding, under the same SOP as applies in this case, prisoner alleging use of excessive force need only file a timely grievance to exhaust his administrative remedies). However, that did not happen. Varner failed to submit a grievance about the February 13th incident until July 24, 2015, more than seventeen months later. (Doc. 68-11, at 3.) Contrary to Varner's position, the Court finds that the IIU investigation into the February 13th incident cannot serve as a stand-in for his duty to exhaust his administrative remedies through the GDC's grievance procedure.

### 5. *Varner's Three Grievances*

Finally, Varner argues that he did file three grievances complaining of the February 13th incident, at least one of which was arbitrarily rejected by administrators at ASMP. While it is true that Varner filed these grievances, each was at least seventeen months past the deadline. These grievances cannot satisfy Varner's obligation to exhaust his administrative remedies because they were not "proper." Woodford, 541 U.S. at 92. The Supreme Court has made clear that proper exhaustion requires compliance with the prison's administrative deadlines and critical procedural rules. Id. Put differently, it is the institution itself, not the PLRA, that "define[s] the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 218. Thus, Varner's untimely grievances cannot satisfy his duty to exhaust,

19

particularly because the grievances were filed far past the ten-day deadline.  See Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005) ("Allowing [a plaintiff's] untimely grievances to meet the exhaustion requirement runs counter to the understanding that § 1997e(a) requires prisoners to invoke and fully exhaust all available administrative grievance processes.").

Alternatively, Varner contends that the untimeliness of his grievances should have been excused for good cause under the GDC's grievance policy definition, which includes excusal for serious illness.  Each grievance was explicitly rejected as untimely by the Grievance Coordinator at ASMP and, again, by the Warden, neither of whom addressed the merits of Varner's allegations.[6] (Doc. 68-11, at 4-7.)  Further, each of the rejections made no mention of why Varner did not qualify for excusal for good cause. (Id.)

Varner's first grievance, filed in 2015, did not specify a reason as to why it should be accepted as untimely, as required by GDC's policy.  Thus, the rejection of that grievance cannot be considered arbitrary.  When Varner filed his next grievance a year later, he did, contrary to Defendant's assertion, specify a reason as to why the grievance was late, namely that Varner has "mental health [issues] with brain damage."  ASMP's Grievance Coordinator

---

[6] See Whatley v. Smith, 898 F.3d 1072, 1083-84 (11th Cir. 2018) (when prison administrators consider the merits of a procedurally flawed grievance, the prison waives its exhaustion defense).

concluded this did not provide good cause, presumably because the grievance was filed almost two and half years late and after Varner had filed at least six unrelated grievances since the February 13th incident. (Doc. 29-2, Attach. B.) As such, it cannot be said that the grievance was arbitrarily rejected. Finally, Varner submitted his third grievance in 2017, which more clearly states his reasons for the late submission. Varner notes that his injuries, isolated status, and inability to comprehend civil law prevented him from filing a timely grievance. This grievance was, predictably, rejected as untimely as it had missed the filing deadline by three and a half years.

Moreover, Varner's first and third grievances were not appealed as required by the GDC grievance procedure. Thus, neither grievance, even if arbitrarily rejected, can satisfy the exhaustion requirement. See Woodford, 541 U.S. at 92; see also Bryant, 530 F.3d at 1378-79 (prisoner must follow institution's grievance appeal procedure to exhaust his administrative remedies). In sum, the Court finds that Varner's grievances were not "proper" because of the significant delay in filing them and that ASMP administrators did not arbitrarily decide Varner failed to show good cause for his untimeliness. In accordance with the foregoing, Defendants' motion to dismiss Plaintiff Varner's complaint for failure to exhaust administrative remedies under the PLRA is granted and Varner's claims are dismissed.

## B. Plaintiffs' Claims for Declaratory and Injunctive Relief

The Court now turns to Defendants' second argument, which asks the Court to dismiss Griggs and Maddox's request for declaratory and injunctive relief against Holt and Philbin. Defendants contend Griggs and Maddox fail to state a claim because their request for declaratory relief is barred by the Eleventh Amendment and their request for injunctive relief is barred by the PLRA.

### 1. *Legal Standard for Motion to Dismiss Under Rule 12(b)(6)*

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) does not test whether the plaintiff will ultimately prevail on the merits of the case. Rather, it tests the legal sufficiency of the complaint. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Therefore, the court must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002).

The court, however, need not accept the complaint's legal conclusions as true, only its well-pled facts. Ashcroft v. Iqbal, 556 U.S. 662 (2009). A complaint also must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plaintiff is required to plead "factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." Id. Although there is no probability requirement at the pleading stage, "something beyond . . . mere possibility . . . must be alleged." Twombly, 550 U.S. at 556-57 (citing Durma Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005)).

*2. The Eleventh Amendment*

In Ex Parte Young, 209 U.S. 123 (1908), the Supreme Court created an exception to the Eleventh Amendment, which limits the power of federal courts to hear suits against a state, in holding that a suit challenging the constitutionality of a state official's action in enforcing state law is not an action against the state. Id. at 159-60. However, the Eleventh Amendment, as interpreted by the Supreme Court, still bars actions against states for retroactive relief, whether that relief be in the form of damages or a declaration that a state officer violated a plaintiff's rights in the past. Green v. Mansour, 474 U.S. 64, 73 (1985) (prohibiting declaratory relief when there is no allegation of ongoing violation of federal law); Edelman v. Jordan, 415 U.S. 651, 667-68 (1974) (prohibiting retroactive award of monetary relief). To decide whether the rule of Ex Parte Young avoids an Eleventh Amendment bar to suit, "a court need only conduct a 'straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" Verizon Maryland, Inc. v. Public Serv. Comm'n of Maryland, 535

U.S. 635, 645 (2002) (quoting Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 296 (1997)).

Here, the Amended Complaint alleges Griggs, Maddox, and other prisoners at ASMP "*will be* subjected to excessive force by correctional officers" and prison officials have failed to reduce the risk that prisoners "*will be* subjected" to further violations of their rights. (Am. Compl., ¶ 162 (emphasis added).) Although Plaintiffs' prayer for relief asks the Court to declare Defendants "violated Plaintiffs' rights," both their brief and complaint show that Plaintiffs are seeking a prospective declaration that Holt and Philbin are presently violating Plaintiffs' rights. (Pls.' Resp. in Opp'n to Mot. to Dismiss, Doc. 68, at 23 n.16; Am. Compl. ¶¶ 162-63.) As such, the Eleventh Amendment does not bar Plaintiffs' claims for prospective declaratory relief.

Defendants also contend the Eleventh Amendment bars Griggs and Maddox from pursuing damages against Holt and Philbin. However, Griggs and Maddox are not seeking damages from either,[7] only prospective declaratory and injunctive relief against those Defendants in their official capacities, as allowed under Ex Parte Young. Moreover, should an expenditure of state funds eventually prove to be necessary as a result of any prospective relief the Court may grant, the Supreme Court has explicitly allowed such

---

[7] While Count II of the Amended Complaint does seek damages against Philbin's predecessor Stan Shepard, it does so only in Shepard's individual capacity. Further, only Varner, not Griggs and Maddox, seeks damages, and, as noted above, Varner's claims are dismissed.

expenditures, noting they are an "inevitable consequence of the principle announced in Ex Parte Young." Edelman, 415 U.S. at 668.

### 3. Declaratory and Injunctive Relief

Defendants claim Griggs and Maddox are not entitled to declaratory relief because they have an adequate remedy available to them, i.e., this lawsuit. Ignoring the circular nature of this argument, Federal Rule of Civil Procedure 57 explicitly provides: "The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Thus, the availability of other remedies does not require the Court to dismiss Plaintiffs' claim for declaratory relief.

Next, Defendants cite Federal Rule of Civil Procedure 65(d) and § 3626(a)(1) of the PLRA to argue that Plaintiffs' request for an injunction fails to state a claim because it is too vague and amounts to a request that Defendants simply obey the law. Rule 65(d), however, governs the required specificity of an "*order* granting an injunction," not a pleading. See FED. R. CIV. P. 65(d) (emphasis added). Moreover, Plaintiffs specifically mention in their prayer for relief that particular injunctive provisions will be determined after conducting discovery. (Am. Compl., at 51.)

Likewise, the PLRA's limitations on prospective relief under § 3626(a)(1)'s "need-narrowness-intrusiveness" test is "a limitation on judicial authority over prisons at the remedial stage, not a heightened pleading requirement imposed on the plaintiffs." Henderson v. Thomas, 891 F. Supp. 2d 1296, 1312 (M.D.

Ala. 2012); see also Williams v. Edwards, 87 F.3d 126, 133 (5th Cir. 1996) ("The district court has fashioned no prospective relief and the provisions of [§ 3626] have yet to be triggered in this case."). If the Court later concludes that injunctive relief is appropriate, the Court will then rely on § 3626(a)(1) to craft that relief. Accordingly, Defendants' motion to dismiss Plaintiffs' claims for declaratory and injunctive relief is denied.

## C. Defendants' Motion to Sever

Defendants move to sever Plaintiffs' claims under Federal Rule of Civil Procedure 20. They argue that such claims do not arise out of the same transaction or occurrence because each Plaintiff's excessive force allegations involve separate incidents with different defendants. Defendants further contend that although Plaintiffs bring the same type of claims, each involves the resolution of unrelated factual disputes.

In response, Plaintiffs argue that their claims arise out of the same series of transactions or occurrences, namely that each Plaintiff was assaulted as part of a "pattern and practice" at ASMP of using excessive force solely to inflict pain on inmates. (See Am. Compl. ¶ 104.)

Federal Rule of Civil Procedure 20(a)(1) governs the joinder of plaintiffs in a lawsuit and uses a flexible standard that requires the plaintiffs to "assert any right to relief . . . arising out of the same transaction, occurrence, or

series of transactions or occurrences" and there be a "question of law or fact common to all plaintiffs." FED. R. CIV. P. 20(a)(1)(A), (B). In the Eleventh Circuit, "joinder is 'strongly encouraged' and the rules are construed generously 'toward entertaining the broadest possible scope of action consistent with fairness to the parties.'" Vanover v. NCO Fin. Servs. Inc., 857 F.3d 833, 839 (11th Cir. 2017) (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966)). District courts are granted "broad discretion" when considering matters of joinder. Id.

Under the first part of Rule 20's test, transaction "is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." Alexander v. Fulton Cnty., 207 F.3d 1303, 1323 (11th Cir. 2000), overruled on other grounds by Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003). Thus, events that are "logically related" to one another are "generally regarded as comprising a transaction or occurrence." Id. (internal quotations omitted).

In Alexander, the Eleventh Circuit concluded that an allegation "of a pattern or practice of discrimination may describe such logically related events and satisfy the same transaction requirement." Id. Although that case concerned race discrimination by a state employer and not excessive force practices at a prison, the salient point is that an unlawful pattern or practice can satisfy the same transaction requirement.

27

Other courts have agreed. In Revilla v. Glanz, 7 F. Supp. 3d 1207 (N.D. Okla. 2014), the court permitted the joinder of four prisoners who alleged Tulsa County Jail's health services had a policy or practice of providing constitutionally deficient medical care. Id. at 1213. Although each plaintiff's injury or death was caused by different ailments, involved different medical staff, and occurred over the span of eighteen months, the court found there was "a logical relationship between circumstances underlying the claims" that permitted joinder of the plaintiffs. Id.

Here, the Amended Complaint alleges a pattern or practice at ASMP of using excessive force solely to harm inmates. While each incident of excessive force occurred separately, Plaintiffs create a "logical relationship" between each event in their allegations that the use of excessive force is a routine practice at ASMP and prison administrators are aware of this practice but refuse to take reasonable steps to prevent further assaults. Indeed, beyond the Plaintiffs' individual incidents, the complaint alleges in detail at least six other assaults by officers on non-party inmates. (Am. Compl. ¶¶ 109–15.) Many of these incidents involve the same correctional officers now joined as Defendants. Finally, while it is true each Plaintiff brings a damages claim against the officers alleged to have assaulted him,[8] the gravamen of the complaint is to seek an end to this ongoing practice at ASMP.

_____

[8] Only Varner brings a claim for supervisory liability. Because his claims are barred by the PLRA's exhaustion requirement, the only remaining damages claims

The second part of Rule 20's test "does not require that *all* question of law and fact raised by the dispute be common, but only that *some* question of law or fact be common to all parties." Alexander, 207 F.3d at 1324 (emphasis in original). While Defendants correctly point out that an Eighth Amendment analysis of each of Plaintiff's individual incidents will present different facts, the determination of all other claims requires answers to overlapping questions of policies and practices at ASMP, the knowledge of prison administrators regarding the pattern of incidents, and the preventative measures those administrators did or did not take to address excessive force incidents. Thus, there are at least some shared questions of law and fact. Furthermore, the dismissal of Varner from the suit reduces the number of different factual questions and the potential for prejudice to Defendants. Accordingly, the Court finds that Plaintiffs satisfy Rule 20's requirements for joinder.

This holding, however, does not foreclose the possibility of severance at a later time. It may be, upon development of the evidence during discovery, Plaintiffs' claims should be severed for trial. If necessary, the Court has the ability under Federal Rule of Civil Procedure 42 to do so. FED. R. CIV. P. 42(b). At this stage of the case, however, judicial economy is best served by joinder, rather than proceedings in duplicative suits. In fact,

---

are the ones brought by Griggs and Maddox against Defendants Evans, Creagor, and Bluitt respectively.

29

Defendants themselves do not object to conducting joint discovery. Therefore, Defendants' motion to sever is denied without prejudice.

### III. CONCLUSION

For the above reasons, Defendants' motion to dismiss (doc. 29) is **GRANTED IN PART AND DENIED IN PART**. Further, Defendant Justin Washington's motions to dismiss (doc. 38, 58) are **GRANTED**. Plaintiff Christopher Varner's claims are **DISMISSED WITH PREJUDICE**, while Plaintiffs Eugene Griggs and Cameron Maddox's claims shall proceed. The Clerk is to **TERMINATE** Defendants Antonio Binns, Justin Washington, Lenon Butler, Rodgerick Nabors, Julian Greenaway, John Doe, Jerry Beard, Scott Wilkes, and Stan Shepard from the case. The Clerk is further **DIRECTED** to add Ahmed Holt, in his official capacity as Assistant Regional Director, Georgia Department of Corrections, and Edward Philbin, in his official capacity as Warden, Augusta State Medical Prison. Also, as stated above, Defendants' motion to sever (doc. 33) is **DENIED WITHOUT PREJUDICE**.

Finally, the stay of discovery in the case is **LIFTED**. Pursuant to this Court's Order of December 4, 2017 (doc. 43), the parties shall confer and submit a Rule 26(f) Report, with proposed case deadlines, within seven days.

**ORDER ENTERED** at Augusta, Georgia, this 24th day of October, 2018.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA